UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANDREA BEREND,**

    **Plaintiff,**

v.                                      Case No.  8:16-cv-1177-T-30AAS

**BLOOMIN' BRANDS, INC. d/b/a
OUTBACK STEAKHOUSE,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 22) and Plaintiff's Response in Opposition (Dkt. 23).  The Court, having considered the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted.  As such, final judgment will be entered in Defendant's favor.

## BACKGROUND

**I.**    **Summary**

Plaintiff Andrea Berend, a former employee of Defendant Bloomin' Brands, Inc. d/b/a Outback Steakhouse, alleges that Bloomin Brands discriminated against her based on a disability when it terminated her employment.  The facts, interpreted in a light most favorable to Berend, reflect that Berend cannot establish a prima facie case of disability discrimination.  Nor can Berend point to any evidence that Bloomin' Brands' legitimate, nondiscriminatory

reason for terminating her is pretextual. Accordingly, Berend's disability discrimination claims cannot survive summary judgment.

## II.     Relevant Facts

Berend was employed with Bloomin' Brands as an Integrated Marketing Manager in its marketing department from approximately November 7, 2014, until her termination on August 10, 2015. Berend was responsible for developing and supporting local marketing integration of national marketing strategies, for negotiating, influencing, and providing marketing support to other areas of the company, for managing the local marketing budget, and for managing the post-program analysis of local marketing initiatives. Communication was a key aspect of all of Berend's duties and her performance was heavily dependent on building relationships and maintaining open lines of communication with other employees, including the field marketing managers, and the operations, training, and finance personnel. Berend was responsible for assisting these other employees with developing and implementing marketing initiatives, and relaying important marketing information from the home office, where Berend worked.

During the relevant time, Berend reported to Kimberly Coles, the Director of Local Marketing. Coles reported to Ryan Sinclair, the Vice President of Local Marketing and John Schaufelberger, the Chief Executive Officer.

Berend's employment was evaluated after approximately ninety days, which she testified was akin to a formal "check-in" about "what's going to happen within [her] career at Bloomin' Brands, and these are the steps we take." (Berend 60:6-9). This ninety-day-

check-in was conducted by Coles and Sinclair. Berend felt that the check-in went "fine" and that the main purpose of the check-in was to discuss how her performance would be evaluated in the future. Specifically, Berend was informed that it was her responsibility to create a list of ways to accomplish her work objectives and, during the more formal evaluation process, Berend and Coles would discuss whether Berend had accomplished those specific objectives. With respect to her performance up to that point, Berend felt like she "needed to add more responsibilities and take on more responsibilities." (Berend 67:22-68:1).

Berend testified that she communicated with Coles on a daily basis. They also had weekly meetings where they would review a status sheet of Berend's assignments. Coles also received feedback about Berend's performance from other employees, such as the operations and training personnel. Berend testified that she had difficulty accomplishing some of her work objectives. Berend acknowledged that, with respect to budgeting errors, there were misses on her watch "every month." (Berend 64:20-65:12). Coles testified that when she addressed a specific marketing error with Berend, Berend seemed unconcerned and did not assist with resolving the error. Coles also testified that she received negative feedback from other employees about Berend's performance.

In mid-June 2015, Berend's formal six-month evaluation was performed. As part of the evaluation process, Berend completed a self-evaluation by color-coding her job objectives according to how she felt she was accomplishing them, using the same form that Coles used to complete her own evaluation of Berend. Each reviewer (Berend and Coles)

highlighted the objectives on the form in either green (succeeding/doing well), yellow (needs improvement), or red (not accomplishing the assigned objective). Berend highlighted one objective in red, six in yellow, and opted not to highlight many of the objectives in any color at all. Coles highlighted four objectives in red (including the one Berend had also highlighted in red), and thirteen in yellow (including all the objectives that Berend had also highlighted in yellow).

Berend testified during her deposition that she needed to improve in several of the areas. For example, she stated that she needed to strengthen her relationships with the other teams because she was the central hub of marketing communication between the marketing, home office, operations, finance, and brand teams. She also admitted that she could have better supported the filed marketing managers—by assessing struggling regions of restaurants and proactively supporting those restaurants—and the field marketing team through planning, brainstorming, and sharing advice on what had worked for other brands.

Another area that needed improvement based on Coles' evaluation was working with an outside advertisement agency to develop and enhance marketing initiatives. Berend testified during her deposition that she admitted to Coles that there was another Integrated Marketing Manager who was doing a better job of working with the agency to produce the reports and plans needed.

Berend stated during her deposition that she struggled with the task of compiling a list of top and bottom restauarant performers. Coles had highlighted this assignment in red. Berend also had an objective of increasing sales by a certain percentage for the lunchtime

restaurant hours, which Coles highlighted in red. Berend testified that she did not devote a significant amount of time to the lunchtime sales initiative. Berend admitted during her deposition that she could have been more proactive in this area. Berend agreed with Coles that Berend was not meeting the objective of growing gift card sales, an objective that both of them had highlighted in red.

At the conclusion of the six-month evaluation meeting, Berend testified that she felt emotional and that Coles' feedback was "not nice[]" and embarrassed her. (Berend 86:11-22; 86:23-87:2). In order to meet Coles' expectations, Berend set a goal for herself to "improve" and work on the specific objectives that Coles addressed with her.

When asked during her deposition if she was ever late to mandatory work meetings, Berend stated: "I'm sure I was. I can't recall specifics, but I'm sure I was." (Berend 87:10-13).

Coles testified that Berend's performance did not improve after the six-month evaluation. Coles also stated that Schaufelberger and Sinclair, who Coles updated frequently on Berend's performance, thought Coles should terminate Berend. Bloomin' Brands terminated Berend in August 2015, because she was "not performing." (Coles 36:18-21). The decision to terminate Berend was made collectively with the leadership team (i.e., Schaufelberger and Sinclair), human resources, and the legal department. Coles testified that human resources had been aware of Berend's performance problems because Schaufelberger had weekly or biweekly meetings with HR and Berend's performance was a topic of conversation. Sinclair's and Schaufelberger's input regarding Coles' termination was that

"it should've been done months earlier." (Coles 37:23-38:6). Coles and Grant Jacobs, from human resources, were present at Berend's termination meeting.

Berend testified during her deposition that she was unaware that Coles had received negative feedback about Berend's performance from others. However, she also stated that it would not surprise her to hear that others had complained about her performance. With respect to the termination meeting, Berend said that she met with Coles and Jacobs and was told "[t]his isn't working." (Berend 89:17-90:3). Specifically, Berend stated:

> Q   Did you have an understanding of what they meant by "this isn''t working"?
>
> A   A basic understanding, I suppose.
>
> Q   What was your basic understanding?
>
> A   That I - - I - - you know, that - - you know, that it wasn't working for them. So that was it.
>
> Q   Why do you think they felt that it wasn't work [sic]?
>
> A   Again, I guess based on my review.
>
> Q   Can you think of any other reasons they might have thought it wasn't working?
>
> A   No.
>
> Q   Were you suspicious that there were any other reasons that they thought it wasn't working?
>
> A.   No.

(Berend 90:1-24).

Berend later testified during her deposition that she believed Bloomin' Brands had discriminated against her because her termination occurred shortly after she informed Coles that she was diagnosed with multiple sclerosis. Sometime around July 4, 2015, Berend informed Coles that she had met with an ear, nose, and throat doctor because she had been experiencing dizziness, lethargy, and lightheadedness. The doctor referred Coles to a neurologist and said that he was concerned about multiple sclerosis. Coles told Berend to keep her posted on her condition.

Subsequently, Berend met with a neurologist. On July 30, 2015, Berend told Coles that the neurologist could not determine Berend's condition and that her symptoms could be related to prior injuries. Specifically, Berend testified as follows:

> Q. So I believe you told me at first that Ms. Coles was aware of your condition; is that right?
>
> A. Yes.
>
> Q. What condition would that be?
>
> A. Multiple sclerosis.
>
> Q. But you did tell her, after the July 30th appointment, that the doctors weren't sure, they were concerned it might be multiple sclerosis?
>
> A. Correct.
>
> Q. Is that right?
>
> A. Yes.
>
> Q. Okay. And besides the comment you told me about where she said, "please keep me posted on what's going on with you," did she make any other comments related to that condition?

    A. No.  Not that I recall.

(Berend 115:5-20).

  The record is undisputed that Berend has never been diagnosed with multiple sclerosis. The record is also undisputed that, during her employment, Berend never provided any information from a doctor indicating that she had a disability. Nor did she ever request an accommodation. Finally, the record is undisputed that the decision to terminate Berend was made collectively by Coles and her supervisors, with consultation from both Bloomin' Brands' human resources and legal personnel.

  Berend's discrimination claim in this case rests solely on the temporal proximity between her termination in August 2015, and the two appointments in June and July 2015. Bloomin' Brands' motion argues that this claim fails as a matter of law. As explained below, the Court agrees.

## SUMMARY JUDGMENT STANDARD

  Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th

Cir. 1998). The record is clear that there is no direct evidence of disability discrimination against Berend; therefore, Berend must prove her claims through the familiar *McDonnell Douglas* circumstantial evidence framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In order to establish a prima facie case, Berend must show that she (1) is disabled, (2) is a qualified individual, and (3) she was subjected to unlawful discrimination because of her disability. 42 U.S.C. § 12112(a); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). If Berend can prove a prima facie case of disability discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If Bloomin' Brands meets this burden of production, the presumption of discrimination raised by Berend's prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).

Berend must then show that Bloomin' Brands' proffered legitimate, nondiscriminatory reason is pretextual. *See id.* Notably, a plaintiff's subjective opinion that the defendant's action was discriminatory, without supportive evidence, is insufficient to establish pretext to avoid summary judgment. *See Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560, 1565 (M.D. Fla. 1995) (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985)).

**I.     Berend Cannot Prove a Prima Facie Case of Disability Discrimination**

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or

(C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The record is undisputed that Berend does not have an actual disability, which Berend appears to concede in her response. There is also no evidence establishing that there was a record of Berend having a disability.

Berend's response argues that Bloomin' Brands regarded her as having a disability. But the record does not support this proposition. Accepting the evidence in a light most favorable to Berend, Berend initially told Coles that she was diagnosed with multiple sclerosis, but then, on July 30, 2015, informed Coles that the neurologist was unsure about the diagnosis and that it could be multiple sclerosis. Other than this communication of information to Coles, which is insufficient to establish a perception of being disabled, there is nothing to even suggest that Coles regarded Berend as having a disability. The record is also undisputed that Berend did not inform any other Bloomin' Brands' employee about her medical appointments or potential diagnosis.

In sum, with respect to her prima facie case, no reasonable fact finder could conclude that Bloomin' Brands had any actual knowledge of, or even a perception of, Berend having a disability. Accordingly, Bloomin' Brands is entitled to summary judgment on this basis alone.

## II.    Berend Cannot Establish that the Reason for her Termination is Pretext

Even if Berend could prove a prima facie case, Bloomin' Brands has pointed to a non-discriminatory reason, i.e., her performance, to support the termination, and Berend has not shown that this reason is pretext for discrimination. The record is replete with substantial

and largely undisputed evidence of Berend's performance problems.  Berend admitted that she had performance problems.  Indeed, she testified that if Coles found her performance inadequate, that would be a valid reason to terminate her.  Berend could not point to a comparator who had similar performance problems and who was treated any differently.  And Berend admitted during her deposition that she could think of no reason, other than performance, for her termination; nor was she suspicious that there was any other reason.

The record also reflects that Coles' supervisors, who were unaware of Berend's doctor's appointments and potential multiple sclerosis diagnosis, encouraged Coles to terminate Berend.  It is undisputed that Berend's termination was discussed prior to any knowledge about her doctor's appointments, and that the decision to terminate Berend was made collectively between Coles, her supervisors, and Bloomin' Brands' human resources and legal personnel.

Berend's response hangs its hat on the temporal proximity of her June and July 2015 doctor's appointments and her August 2015 termination.  Berend speculates and surmises that these events had to be related; this falls woefully short of creating a genuine issue of fact.  Berend needs to present "concrete evidence in the form of specific facts" rebutting Bloomin' Brand's nondiscriminatory reason.  *See Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (explaining that "conclusory allegations without specific supporting facts have no probative value" in opposing summary judgment).

Finally, Berend's supposition that future medical appointments would "become more of a problem" is insufficient to create a factual issue because Berend relies on nothing more than mere conjecture, which, as emphasized above, is insufficient to rebut Bloomin' Brand's nondiscriminatory reason.

In sum, Berend falls short of establishing a genuine issue for trial with respect to her claims of disability discrimination. The record reflects that she is not disabled as a matter of law. Moreover, Berend has not shown that Bloomin' Brands' legitimate, nondiscriminatory reason is pretextual.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 22) is granted.
2. The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff.
3. After entry of final judgment, the Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on July 20, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record